**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEBBIE ISBELL,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No. 15 CV 7333** |
| **v.** | ) | |
| | ) | **Judge Pallmeyer** |
| | ) | |
| **BAXTER HEALTHCARE** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT
BAXTER'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Debbie Isbell, by and through her undersigned counsel, submits this Response to

Defendant Baxter's Motion for Summary Judgment:

**I.      LEGAL STANDARD**

Where a defendant's motion for summary judgment is well supported, the burden shifts to

Plaintiff to respond affirmatively with "specific facts showing that there is a genuine issue for

trial." *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983).  An issue is "genuine" if a

reasonable fact finder could find for Plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  Where such a genuine issue of material fact exists, summary judgment is not appropriate.

*Id*.  When deciding a motion for summary judgment, the court must consider all evidence, and

draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party –

here, Plaintiff.  *Id*. at 255.

## II. ARGUMENT

### A. Count II - Retaliation

*Baxter Has Failed To Prove That No Genuine Issue Of Material Fact Remains Regarding "Causation" Between Ms. Isbell's July 2013 Internal Complaints And Her Termination*

In its Motion, Baxter appears to relish in making personal attacks against Ms. Isbell, including within its retaliation section of its Motion. In that section, Baxter goes so far as to call Ms. Isbell, ironically, "meanspirited," and as well as "incompetent." *See* Baxter's Mem. at p. 8. There is no place for that type of public and derogatory characterization of Ms. Isbell. Nor are these *ad hominem* attacks in any way relevant to Baxter's Motion. Nevertheless, this Court might still pause to take notice of the fact that Baxter is referring to the very same individual, Ms. Isbell, who undeniably enjoyed a long and successful career in the healthcare industry prior to becoming employed by Baxter (*see* Pltf.'s Add. Facts at ¶1); who was thereafter employed by Baxter for a significant duration of more than six years at a high level (*see* Def.'s Facts, at ¶ 3); and who was, even according to Baxter, meeting (or perhaps actually exceeding) Baxter's legitimate performance expectations at the time of her last performance review with the Company, shortly prior to her termination. (*See* Pltf.'s Add. Facts, at ¶ 2).

In any event, in support of its Motion with respect to Ms. Isbell's retaliation claim, Baxter first attempts to suggest that Baxter intended to fire or take some action against Ms. Isbell *prior* to the time that she made her internal complaints of discrimination and retaliation in July 2013. (*See* Baxter's Motion, at pp. 8-10) However, Baxter's witnesses not only cannot agree upon that theory, their testimony actually directly contradicts it. Here, Junkin admitted that, at the time Ms. Isbell made her July 2013 internal complaints, Baxter had *not* decided to fire her. (*See* Pltf.'s Add. Facts, at ¶ 26) That is significant because, as discussed below, at least Gawin claims that Junkin

2

was the decision-maker, along with her, with respect to Ms. Isbell's termination. (*See* Plaintiff's Response to Def.'s Facts, at ¶¶ 47-48).

Perhaps more importantly, Brewton -- who conducted the so-called "investigation" into Ms. Isbell's allegations of discrimination and retaliation and who actually gathered substantial information regarding Ms. Isbell's employment as opposed to her complaints -- likewise admitted that, at the time of and during her investigation, Baxter was *not* intending to fire Ms. Isbell or otherwise discipline her. (*See* Pltf.'s Facts, at ¶ 26) Furthermore, no one ever claimed to Brewton during that investigation that Baxter had any such intentions. (*Id.* at ¶ 26) That includes Junkin, who admittedly had contact with Brewton as part of that investigation. (*See* Pltf.'s Response to Def.'s Facts, at ¶ 63).

Moreover, even if Ms. Isbell had performance related deficiencies prior to making her July 2013 internal complaints, that in no way ends this Court's inquiry. Any such evidence of those alleged deficiencies does not negate all possible reasonable inferences that Baxter fired Ms. Isbell in retaliation for coming forward with those internal complaints. This is particularly true where, as here, Baxter had *not* fired or even made a decision to fire Ms. Isbell prior to her making those internal complaints. (*See* Pltf.'s Add. Facts, at ¶ 26) Put another way, with respect to causation the question is not whether Ms. Isbell was a perfect employee or a deficient employee prior to making her July 2013 internal complaints. The question is whether Baxter was motivated to fire Ms. Isbell *because* she made those internal complaints. Indeed, even if she was a perfect employee, thereafter lodged internal complaints, and was subsequently terminated by Baxter, the question would still remain whether Baxter's termination decision was motivated by those internal complaints.

Thus, Baxter's claim that, as a matter of law, there can be no "causation" between Ms. Isbell's July 2013 internal complaint and her termination is totally belied by the admissible record evidence. At best for Baxter, genuine issues of material fact remain with respect to the issues of causation in the context of Ms. Isbell's Title VII retaliation claim.

Furthermore, Baxter additionally argues, although in passing and somewhat half-heartedly, that "causation" is not possible as a matter of law because Gawin purportedly possessed "little knowledge" of Ms. Isbell's July 2013 internal complaints. (*See* Baxter's Mem. at p. 10) That argument with respect to causation should also be rejected because it is an undisputed fact that Gawin knew about Ms. Isbell's July 2013 internal complaints at the time she made the decision to fire Ms. Isbell. (*See* Pltf.'s Add. Facts, at ¶ 29)

> *Baxter Has Failed To Prove That No Genuine Issue Of Material Fact Remains As To Whether Ms. Isbell Engaged In "Protected Activity" By Making Her 2012 or July 2013 Internal Complaints*

Baxter next attempts to argue that Ms. Isbell did *not* engage in any "protected activity" that is recognized by Title VII by making her July 2013 internal complaints. (*See* Def's. Mem. Law at p. 10) ("Plaintiff further cannot demonstrate that she engaged in any protected activity under Title VII"). As support for this contention, Baxter goes back in time to Ms. Isbell's 2012 internal complaints. (*Id.* at p. 10) Baxter claims that those 2012 internal complaints that Ms. Isbell made to then Baxter Manager, Inglese, were directed only at the conduct of Waite. (*Id.*) That is inaccurate and directly contrary to the admissible record evidence. (*See* Pltf.'s Add. Facts, at ¶¶ 4-5) Ms. Isbell's 2012 complaints were not limited to Mr. Waite. (*Id.* at ¶ 5) Ms. Isbell also complained to Inglese about, *inter alia*, his own conduct of a sexual nature. (*Id.*)

Baxter also contends that Ms. Isbell's 2012 internal complaints to Inglese did not sufficiently raise the specter of Title VII violations (*see* Def.'s Mem. at p. 10) because, according

to Baxter, those complaints were not about conduct or statements that were of a "sexual" nature. (*Id.*) That position is again directly contrary to the admissible record evidence. In 2012, Waite and others regularly made sexual banter and talked about erectile dysfunction at meetings, including "I need some of that" and related comments. (*See* Pltf.'s Add. Facts, at ¶ 4) Waite and the others talked about erectile dysfunction even when it "had nothing to do with what we were working on." (*Id.*) Thus, Ms. Isbell's 2012 internal complaints were clearly regarding conduct that was of an offensive sexual nature. (*Id.* at ¶¶ 4-5)

Even Waite's testimony supports the inference that his conduct -- as alleged by Ms. Isbell and reported to Inglese in 2012 -- was of a sexual nature. Predictably, Ms. Isbell and Waite testified in a diametrically opposed fashion. Ms. Isbell testified that Waite engaged in the above-referenced conduct of which she complained to Inglese, while Waite denied that he engaged in any of that conduct *in the workplace*. However, Waite admitted that it was inappropriate to make jokes or discuss Cialis or erectile dysfunctions issues in the work setting. (*See* Pltf.'s Add. Facts, at ¶ 17) Thus, Waite at first denied making comments of a sexual nature at all regarding Cialis, but then admitted that he had, but claimed that he only did so outside of work. (*Id.*)

In sum, in the context of this Motion, this Court need not resolve the genuine issues of material fact as to whether Waite engaged in the conduct of which Isbell accused him of in 2012. Nonetheless, Waite's admission establish that, if he did, even he admits that Ms. Isbell engaged in statutorily protected activity by reporting and complaining of that conduct (and Inglese's as well) in 2012. Waite should know because, while employed by Eli Lilly and prior to becoming employed by Baxter, he engaged in the very type of behavior that Ms. Isbell later complained of at Baxter. (*See* Pltf.'s Add. Facts, at ¶ 3) Like Ms. Isbell, an Eli Lilly employee engaged in protected activity and reported Waite. (*Id.*) As a result, Eli Lilly disciplined him for that conduct. (*Id.*)

Baxter next argues that, because Ms. Isbell's complaints in July 2013 to Junkin were allegedly just a re-hash of her internal complaints to Inglese in 2012, she purportedly likewise did not engage in "protected activity" at that time either. (*See* Def.'s Mem., at p. 11)  As an initial matter, Ms. Isbell's July 2013 internal complaints to Ms. Junkin were *not* identical to the 2012 internal complaint she made to Inglese. (*See* Pltf.'s Add. Facts, at ¶¶ 7, 9, 10, 11)  Ms. Isbell's July 2013 internal complaints also included allegations that she was discriminatorily denied access to meetings that were part and parcel of her job responsibilities.  Mr. Waite deliberately "dis-invited" the Plaintiff from a meeting, and then lied about it to cover it up. (*See* Plaintiff's Add. Facts, at ¶ 10)  As a result of being excluded from meetings, it was difficult for Ms. Isbell to perform her job duties. (*Id.* at ¶ 11).

Even if Ms. Isbell's July 2013 internal complaints had been the same as previously raised by her in 2012, Brewton, who conducted the so-called investigation into Ms. Isbell's July 2013 internal complaints, admitted that Ms. Isbell in fact raised claims of discrimination. (*Id.* at ¶ 30)  Brewton's testimony alone establishes that Ms. Isbell engaged in protected activity.

Thus, for all of those additional reasons, the admissible evidence of record establishes that, at a minimum, genuine issues of material fact remain regarding whether Ms. Isbell engaged in "protected activity" under Title VII.  However, based upon that admissible record evidence, it is Isbell's position that this Court should find, as a matter of law, that Ms. Isbell in fact engaged in protected activity for Title VII purposes.

Baxter also essentially argues that, because Ms. Isbell did not have a likelihood of succeeding on the merits of her internal complaints, she did not have an objective, reasonable, and good faith basis for believing that she was engaged in protected activity. (*See* Baxter's Mem. Law, at p. 11) (*citing E.E.O.C. v. Concentra Health Servs., Inc.*, No. 05 C 1109, 2006 WL 2024240, at

*3 (N.D. Ill. July 12, 2006), *aff'd,* 496 F.3d 773 (7th Cir. 2007)  Baxter's interpretation of the law

on this point is incorrect.  Indeed, as further set forth below, the only way that this Court can find

that Ms. Isbell did not engage in Title VII "protected activity" in making her internal complaints is

if her complaints were "utterly baseless."

      To establish that a plaintiff reasonably believed that the employer's conduct violated Title

VII, the employee "must not only have a subjective (sincere, good faith) belief that he opposed an

unlawful practice; his belief must also be objectively reasonable, which means that the complaint

must involve discrimination that is prohibited by Title VII."  *Hamner,* 224 F.3d at 707.

Conversely, if the type of conduct at issue is not prohibited by Title VII, the employee's complaints

about it are not "statutorily protected" under Title VII.  However, an employee need not actually

succeed on a separate claim against the offending conduct in order for the conduct to be a valid

basis for the retaliation claim.  *See Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446 (7th Cir.1994);

*Firestine v. Parkview Health System, Inc.,* 388 F.3d 229, 234 (7th Cir.2004).

      In other words, if Title VII prohibits the type of conduct reported, the conduct can serve to

meet this element even if it does not, as in the present case with regard to Ms. Isbell, rise to the

level of creating an independent successful claim.  *See, e.g., Dey v. Colt Const. & Dev. Co.*, 28

F.3d 1446, 1458 (7th Cir. 1994) (holding that, even if a trial were to reveal that the plaintiff's work

environment was neither hostile nor abusive, that would not affect the sincerity or reasonableness

of her belief that Defendant had acted in violation of the law; *Holland v. Jefferson Nat. Life Ins.*

*Co.*, 883 F.2d 1307, 1315-16 (7th Cir. 1989) ("[W]hile the acts of harassment alleged by Mrs.

Holland may not have been "sufficiently severe or pervasive 'to alter the conditions of [her]

employment and create an abusive working environment . . . we do not believe that Mrs. Holland

unreasonably believed that the conduct of Schaffer and Carmichael was in violation of the law . . .

We cannot say that Mrs. Holland's allegations of misconduct are 'utterly baseless'")

(emphasis added); *Firestine v. Parkview Health Sys., Inc.*, 388 F.3d 229, 234 (7th Cir. 2004)

(holding that, only a groundless claim "resting on facts that no reasonable person possibly could

have construed as a case of discrimination" could not constitute a statutorily protected activity;

*Bevilacqua v. Cubby Bear, Ltd.*, No. 98 C 7568, 2000 WL 152135, at *7 (N.D. Ill. Feb. 4, 2000)

(holding that an employee may be considered to be engaged in protected activity even if the

conduct complained of does not actually constitute harassment that violates Title VII); *in accord*

*Beamon v. Hewitt Associates, LLC*, No. 03 C 0794, 2004 WL 2038169, at *6 (N.D. Ill. Sept. 8,

2004).

      Accordingly, in the present case, the issue is not whether Ms. Isbell actually suffered

discrimination or harassment sufficient to prevail in a Title VII claim, the issue is whether she had

a good faith belief that she was being subjected to conduct that might violate Title VII. Thus,

because Ms. Isbell's internal complaints were far from "utterly baseless," she sufficiently engaged

in "protected activity," as a matter of law, as contemplated by Title VII and the decisions

interpreting it in the context of retaliation claims. At a minimum, whether Ms. Isbell engaged in

"protected activity" is a question for the jury. For all of those reasons, Baxter's Motion should be

denied.

      *Baxter Attempted Preemptive Arguments Fail To Prove That No Genuine Issues Of*
      *Material Fact Remain*

      Finally, in support of its attacks on Ms. Isbell's retaliation claim, Baxter attempts to try and

raise and debunk several arguments that go to the very heart of various weaknesses in Baxter's

defense and in its present Motion – and which Baxter clearly anticipated being raised by Ms. Isbell

in this Response. For example, Baxter attempts to side step the strong evidence of its retaliatory

motive in terminating Ms. Isbell within weeks of making her July 2013 internal complaints. (*See*

Baxter's Mem. Law, at p. 8)  In support of that position, Baxter cites to *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.3d 317, 321 (7th Cir,. 1992).  (*Id.*)  However, *Juarez* and its progeny do not stand for the proposition that timing is irrelevant, rather that timing, in and of itself, is insufficient to prove retaliation.  In other words, a plaintiff must come forward with some additional evidence to create a genuine issue of material fact and avoid summary judgment.  Ms. Isbell has done just that by coming forward with admissible evidence that call into question Gawin's real motive and thus create genuine issues of material fact.

Here, the undisputed record evidence demonstrates that, prior to making her July 2013 internal complaints, Ms. Isbell made at least two other internal complaints to Gawin, the decision-maker with respect to Ms. Isbell's termination.  (*See* Pltf.'s Add. Facts, at ¶ 8; *see also* Pltf.'s Response to Def.'s Statement of Facts, at ¶ 47)  On each of those pre-July 2013 occasions and in direction contravention of Baxter's own policies and procedures, Gawin did not disclose and shielded those complaints from Baxter's human resources personnel.  (*See* Pltf.'s Add Facts, at ¶ 8)  However, Gawin could not shield Ms. Isbell's July 2013 internal complaints from Baxter's human resources personnel because it is undisputed that Ms. Isbell complained directly to human resources, instead of to Gawin.  (*Id.* at ¶¶ 7, 9).

There are yet additional facts that create genuine issues of material fact regarding Gawin's true motive with regard to Ms. Isbell's termination.  For example, according to the testimony of Baxter's witnesses Gawin lied about things that were material to Ms. Isbell's complaints and Ms. Isbell's termination.  For example, Gawin lied to Ms. Isbell and told her that Culleton and Waite, and not her, had intentionally excluded Ms. Isbell from meetings.  (*See* Pltf.'s Response to Baxter's Statement of Facts, at ¶ 37; *see also* Def.'s Statement of Facts, at ¶ 37)  However, Waite testified that it was Gawin's idea to exclude Ms. Isbell from meetings, and not his idea.  (*See*

9

Pltf.'s Add Facts, at ¶ 15)  Culleton testified that he never talked to Ms. Gawin about Ms. Isbell. (*See* Pltf.'s Response to Def.'s Facts, at ¶ 37).

Moreover, even with respect to who made the decision to terminate Ms. Isbell, Ms. Gawin falsely claimed that she and Junkin made the decision to fire Ms. Isbell.  (*See* Pltf.'s Response to Def.'s Facts, at ¶, 47)  Junkin testified that it was Gawin's decision, and not her decision.  (*Id.*)

Finally, despite Baxter's protestations to the contrary, Baxter's "investigation" of Ms. Isbell's was a "sham" and constitutes further evidence of pretext.  Brewton admitted that she did not follow Baxter's policies and procedures in investigating Ms. Isbell's complaints, and acted contrary to them.  (*See* Pltf.'s Add. Facts, at ¶ 21)  Brewton even told one of the subjects of the complaint, Waite, that Ms. Isbell's sexual harassment allegations were not significant and were not a big deal.  (*Id.* at ¶ 16).

More importantly, Waite admitted to Brewton and O'Brien that Ms. Isbell was in fact being excluded from meetings.  *(Id.* at ¶¶ 13-14)  Even Brewton admitted that Waite admitted to certain of Ms. Isbell's allegations.  (*Id.* at ¶ 22)  Yet, despite admittedly finding Ms. Isbell to be wholly credible, Baxter still claimed that there was no basis for any of Ms. Isbell July 2013 internal complaints.  (*Id.* at ¶ 23)  Baxter took absolutely no action against two-time offender Waite, despite the fact that its policies would have allowed disciplinary action up to and including termination; that he had admitted to engaging in certain of the conduct at issue; and that Baxter knew that Waite had now been the subject of two separate internal complaints.  (*Id.* at ¶ 24) Instead, Baxter fired Ms. Isbell.

Based upon all of the foregoing, genuine issues of material fact clearly remain with respect to the seminal issues in this case, i.e., whether Gawin was motivated by a retaliatory motive and

whether the reason proffered by her and Baxter for Ms. Isbell's termination are pretexts for retaliation.

*Count I – Age Discrimination*

Plaintiff's counsel concedes that, based upon the admissible evidence cited by Baxter applicable law, Plaintiff lacks a good faith basis to challenge Baxter's Motion directed to Count I, Plaintiff's claim under the ADEA.

**WHEREFORE**, Plaintiff, Ms. Isbell, by and through her undersigned counsel, respectfully requests the entry of an Order denying Defendant's Motion for Summary Judgment with respect to Count II (retaliation), and for such other and further relief as is appropriate under the circumstances.

**RESPECTFULLY SUBMITTED,**

By: **/s/ Michael I. Leonard** \
**Counsel for Plaintiff**

**LEONARDMEYER, LLP** \
Michael I. Leonard \
Ethan E. White \
John D. Killacky \
120 North LaSalle – 20th Floor \
Chicago, Illinois 60602 \
(312) 380-6659 (direct) \
(312) 264-0671 (fax) \
Dated: August 30, 2016

## <u>CERTIFICATE OF SERVICE</u>

I, Michael I. Leonard, an attorney, hereby certify that the above document was served via the CM/ECF filing system on August 30, 2016 to all counsel of record.

<u>**/s/ Michael I. Leonard**</u>
Counsel for Plaintiff

**LEONARDMEYER LLP**
Michael I. Leonard
120 N. LaSalle Drive Suite 2000
Chicago, Illinois 60602
(312) 374-8084 (phone)
(312) 264-0671 (fax)